BENJAMIN WEBSTER *vs.* JOSHUA HOLLAND.

*Parol demise. Flowage—what title essential to complainant. Grant of right of flowage—construction of.*

Where one of three joint grantees paid no part of the purchase-money, and claimed neither possession nor title under the deed, nor exercised any control over the premises, he may be considered as having made a parol demise of his interest to the other grantees; and such a transfer, followed by more than forty years exclusive possession on the part of his co-grantees and their assigns, would bar any claim which he might thereafter assert.

The fact that a fee, of which a complainant is sole seized, is liable to be defeated by the non-performance of some condition subsequent by some former owner, will not preclude the complainant from recovering of a stranger to the title the damages sustained by flowage while he is in possession, no one having entered to claim a forfeiture for condition broken.

The grant by deed of " a full and perfect right to flow all land belonging to " the grantors, " situated in " a certain town, " and adjoining the Brown brook, so-called, meaning, nevertheless, to grant no right of flowage which would injure *of effect* the privilege of the Philpot mill, so-called,"—conveyed the right to flow such only of the grantors' lands there as would be flowed by a dam, so constructed as not to interfere with the Philpot mill-privilege as it existed at the date of the grant.

ON FACTS AGREED.

COMPLAINT for flowage, founded on R. S., c. 92.

The facts as they existed on the face of the earth can be readily understood from the opinion.

*H. H. Burbank*, for the complainant.

*C. R. Ayer*, for the respondent.

BARROWS, J.   This complaint for flowage of land lying in Limerick, by means of a dam situated on Brown's brook, comes before us for adjudication upon an agreed statement of facts, in which the parties have stipulated that if the plaintiff has a full and complete title to the land flowed, the case is to be remanded, to have the damages ascertained as the statute provides.   But if the defendant

has the right which he claims to flow the land, then plaintiff is to become nonsuit. The complainant must show that he is the sole owner of the land, or he fails to maintain his suit. *Davis* v. *Stevens*, 57 Maine, 593; *Tucker* v. *Campbell*, 36 Maine, 346. He presents a warranty deed of the premises to himself from Moses Philpot, dated May 9th, and recorded May 11, 1861.

In the absence of any further evidence respecting the title, this would suffice under the foregoing stipulation to entitle the plaintiff to have his damages ascertained, unless the defendant proves that he has the right to flow the land. But the plaintiff's title is traced back to John Watson, who, it seems to be conceded, was the owner of the land at some time prior to June 2, 1824.

On that day his administratrix, under license from the probate court, granted Oct. 26, 1823, appears to have conveyed a parcel of land, which included this, to Richard, Andrew, and John Philpot, by a deed regularly and seasonably executed, and delivered within the year after the granting of the license, though not acknowledged by the grantor till Oct. 1, 1841, nor recorded until Sept. 7, 1854.

One of the grantees in this deed, John Philpot, does not appear ever to have made a written conveyance of the undivided third which he acquired by this deed, and this would defeat the present suit if it did not affirmatively appear in the agreed statement that John paid no part of the purchase-money, and never claimed possession or title under the deed, nor exercised any control over the premises. He may be considered as having made a parol demise of his interest to the other two grantees, Richard and Andrew Philpot. Such a transfer, followed by more than forty years' exclusive possession by Richard and Andrew and their grantees, would effectually bar any claim that could now be asserted by John. So it was held in *Hamor* v. *Wasgatt*, a Hancock county case, decided in 1864 (not reported). See also, *Sumner* v. *Stevens*, 6 Met. 337.

Andrew Philpot quitclaimed his undivided half of the whole parcel, Aug. 26, 1854, to Richard, who thus became sole seized, and by his will, duly probated in 1858, devised his real estate to his son Moses (the complainant's grantor), charged, however, with the

maintenance of his wife, Huldah Philpot, and subject to a life-estate in her in certain portions of the same. But we find nothing in the provisions of the will which can prevent Moses from conveying to the complainant such an estate as will enable him while in possession, under a warranty deed from Moses, to maintain this process against any one wrongfully flowing the land. That the fee, of which a complainant is sole seized, is liable to be defeated by the non-performance of some condition subsequent by some former owner, will not preclude him from recovering of a stranger to the title the damage sustained by flowage while he is in possession, no one having entered to claim a forfeiture for condition broken.

It remains for us to determine whether the respondent is entitled to flow the land according to his claim, as the assign, through certain mesne conveyances, of the Limerick Woolen Manufacturing Co., to whose trustees Richard Philpot and als. in 1846, while they owned the premises, granted by deed "a full and perfect right to flow all lands belonging to us, situated in said Limerick, and adjoining the Brown brook, so-called, meaning, nevertheless, to grant no right of flowage which would injure *of effect*" (*or affect* probably intended), "the privilege of the Philpot mill, so-called." In the days when the technical rules of construction, laid down in the Touchstone and other ancient books of the law, were more rigidly adhered to than they are now, it might perhaps be questionable whether these grantors, having first conveyed "a full and perfect right to flow all the lands" there situate, belonging to them, could take back the right to flow a part of them by adding, in the same conveyance, "meaning, nevertheless, to convey no right of flowage which shall injure," etc. See 4 Greenl. Cruise, 300, Title, Deed, c. 20, § 8; Sheppard's Touch. 88; Hobart, 173.

But later decisions have effectually subordinated the more technical rules of construction to the more equitable general one, which requires us to give effect to the apparent intention of the parties if possible, provided that intention contravenes no positive rule of law.

And we think it manifestly the intention of the parties to this

grant that the grantees should acquire thereby only the right to flow such of the grantors' lands there as would be flowed by a dam so constructed as not to interfere with the Philpot mill-privilege as it then existed. The agreed statement of facts informs us that the dam actually constructed by the Limerick Manufacturing Co., when there was a full head of water, did interfere with and obstruct the use of the Philpot mill-privilege, but did not flow the premises now owned by the complainant.

It further appears that after the complainant bought of Moses Philpot, the respondent acquired a title to the Philpot mill-privilege, took away the old mill there, and by means of a dam, five feet higher than that erected by his predecessors, the Limerick Manufacturing Co., overflows the old Philpot dam and the complainant's land, claiming the right to flow all the lands that were owned by Richard Philpot and others at the time of the grant aforesaid, untrammeled by the restrictive clause in the grant.

This proceeding cannot relieve him from the payment of damages for flowing such of the Philpot lands as would not be flowed by a dam which would not interfere with the old Philpot mill-privilege. Accordingly, *The complainant's damages are to be ascertained in the mode prescribed by the statute.*

APPLETON, C. J.; CUTTING, DICKERSON, DANFORTH, and TAPLEY, JJ., concurred.